IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CAROL ANN KRUS,                    *

     Plaintiff,                          *

v.                                 *          Civil Action No. GLR-20-740

DENNIS KRUS,                       *

     Defendant.                          *

                       ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff Carol Ann Krus' Motion for Summary Judgment (ECF No. 21). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion.

## I.    BACKGROUND[1]

### A.    Factual Background

Plaintiff Carol Ann Krus and Defendant Dennis Krus are siblings. Their parents, Walter and Mary Krus, are deceased. This action involves a promissory note between Walter and Mary Krus and Defendant, which Plaintiff now seeks to enforce.

---

[1] Unless otherwise noted, the facts outlined here are set forth in Plaintiff's Amended Complaint. To the extent the Court discusses facts that Plaintiff does not allege in her Amended Complaint, they are uncontroverted and the Court views them in the light most favorable to the non-moving party. The Court will address additional facts when discussing applicable law.

Defendant presently resides at 6103 Franklin Gibson Road in Tracy's Landing, Maryland (the "Property"), where he has lived for more than thirty years. (Dennis Krus Dep. at 8:7–8, Pl.'s Exs. at 58, ECF No. 21-2).[2] Defendant and his ex-wife originally purchased the Property for $265,000 in approximately 1988. (Id. at 8:12–9:10, Pl.'s Exs. at 58). At that time, Defendant and his ex-wife took out a mortgage on the Property for $125,000. (Id. at 9:3–8, Pl.'s Exs. at 58). About two years after moving into the Property, Defendant and his ex-wife divorced. (Id. at 8:24–9:2, Pl.'s Exs. at 58). Philip Gagne, who was Defendant's roommate, bought the ex-wife's share of the house for $65,000 and became a part owner of the Property. (Id. at 11:7–16, Pl.'s Exs. at 58). Defendant continued to make the mortgage payments on the Property. (Id. at 11:15–16, Pl.'s Exs. at 58).

Approximately two years later, Defendant met his current wife and they decided to live in the Property together. (Id. at 11:17–19, Pl.'s Exs. at 58). Gagne agreed to move out of the Property, so long as Defendant agreed to pay $75,000 to compensate Gagne for his share of the Property plus the cost of improvements Gagne made to the Property while living there. (Id. at 11:19–23, Pl.'s Ex. at 58). Defendant spoke with his parents, who agreed to loan him $200,000 to buy out Gagne and to pay off the existing mortgage on the Property. (Id. at 11:23–12:7, Pl.'s Exs. at 58–59).

---

[2] Plaintiff filed Exhibits A–G to her Motion for Summary Judgment in a single PDF file. (See Pl.'s Exs., ECF No. 21-1). Likewise, Defendant filed Exhibits A–I to his Opposition in a combined document. (See Def.'s Exs., ECF No. 24-2). For clarity, the Court will provide additional pin cites to the parties' Exhibits using the page numbers assigned by the Court's electronic case filing system.

Consistent with this agreement, Defendant executed a Promissory Note with Walter and Mary Krus on November 3, 1998 (the "Promissory Note" or "Note"). (See Promissory Note, Pl.'s Exs. at 2–3). Pursuant to the Promissory Note, Defendant agreed to pay the holder of the Note (the "Holder") the sum of $200,000 plus interest at a rate of seven percent per year. (Promissory Note at 1, Pl.'s Exs. at 2). The Promissory Note states that it was secured by the Property. (Id.). The Promissory Note further states that it "shall be in [sic] due, unless earlier accelerated, in continuous until sale of house, payable every monthly [sic], in the amount of $1150.00" and "[a]ll payments received shall be credited to interest." (Id.). In addition, the Note provides that in the event Defendant failed to make a payment, the Holder "shall have the option to accelerate the payment of the full principal sum and accrued interest payable." (Id.). Lastly, the Note states: "THIS IS A BALLOON NOTE AND THE FULL AMOUNT OF INTEREST AND PRINCIPAL DUE SHALL BE PAYABLE UPON SALE, TRANSFER OR DESTRUCTION OF THE COLLATERAL SECURING THIS NOTE." (Id. at 2, Pl.'s Exs. at 3).

The same day the parties executed the Promissory Note, Defendant and his parents executed a deed, which was recorded on March 19, 1999 (the "1999 Deed"). (See 1999 Deed, Def.'s Exs. at 3–5, ECF No. 24-2). The 1999 Deed transferred the Property from Dennis Krus and Philip Gagne to Dennis Krus and his parents as tenants in common. (Id. at 1, Def.'s Exs. at 3). On June 30, 2003, Defendant and his parents executed a "Corrective

Deed," which was recorded on September 2, 2003 (the "Corrective Deed").[3] (See Corrective Deed, Def.'s Exs. 6–11). The Corrective Deed assigned the Property to Defendant and his parents as joint tenants with the right of survivorship. (Id. at 1, Def.'s Exs. at 6).

After the Promissory Note was executed, Defendant made monthly payments to his parents in the amount of $1,150. (Dennis Krus Dep. at 18:1–3, Def.'s Exs. at 45). At some point, however, Defendant and his parents verbally agreed to lower Defendant's monthly payments to $1,000. (Id. at 18:23–19:13, Def.'s Exs. at 45). Defendant did not keep precise records of his payments under the Promissory Note. (Id. at 36:7–11, Def.'s Exs. at 50). Defendant also occasionally missed monthly payments. (See Carol Krus Dep. at 30:1–3, Def.'s Exs. at 22; Dennis Krus Dep. at 57:6–24. Def.'s Exs. at 55). In any event, between November 1998 and November 2017, Defendant's payments on the Note totaled $233,450. (Dennis Krus Dep. at 35:24–36:6, Pl.'s Exs. at 64–65; see also Demand Letter at 1–3, Pl.'s Exs. at 11–13).

Walter Krus died in 2004, and Mary Krus died on November 19, 2017. (Carol Krus Dep. at 8:24–9:5, Def.'s Exs. at 16–17). Upon Mary's death, Defendant stopped making payments on the Promissory Note. (Am. Compl. ¶ 17, ECF No. 7).

---

[3] In his deposition, when asked why the deed was called a "Corrective Deed," Defendant testified: "Because I think the previous deed I had done to put my parents on it as interest holders and I think I messed it up and I had to get it fixed." (Dennis Krus Dep. at 48:4–6, Def.'s Exs. at 53). Defendant explained that, around the time he and his current wife received a home equity loan from his credit union, an attorney from the credit union prepared the Corrective Deed because the original deed "wasn't properly written the way for what our intent was." (Id. at 48:8–20, Def.'s Exs. at 53).

Plaintiff was the sole beneficiary of Mary's estate (the "Estate"). (Carol Krus Dep. at 19:24–25, Def.'s Exs. at 19). On May 13, 2019, the Estate assigned its rights in the Promissory Note to Plaintiff. (See Assignment & Assumption Agreement at 1–2, Pl.'s Exs. at 5–6). By letter dated December 9, 2019, Plaintiff informed Defendant of her intent to accelerate the full amount of the Promissory Note due to Defendant's failure to make payments after their mother's death. (See Demand Letter at 1–3, Pl.'s Exs. at 11–13). Despite Plaintiff's demand, Defendant did not make any additional payments under the Promissory Note. (Am. Compl. ¶ 20). On March 5, 2020, Defendant executed a deed that "grant[ed] and convey[ed]" the Property from Defendant and his parents to Defendant and his wife (the "2020 Deed"). (2020 Deed at 1, Pl.'s Exs. at 15; see also Dennis Krus Dep. at 45:8–47:6, Def.'s Exs. at 52).

## B. Procedural History

Plaintiff initiated this action against Defendant on March 19, 2020. (ECF No. 1). Plaintiff subsequently filed an Amended Complaint on March 23, 2020. (ECF No. 7). Plaintiff's two-count Amended Complaint alleges: breach of the promissory note (Count I); and declaratory judgment (Count II). (Am. Compl. ¶¶ 23–32, ECF No. 7). Plaintiff seeks a declaration that the Promissory Note is now due and owing and an entry of judgment against Defendant in an amount of $275,000 plus interest, costs, and attorneys' fees. (Id. at 5).

On September 25, 2020, after the conclusion of discovery, Plaintiff moved for summary judgment. (ECF No. 21). Defendant filed an Opposition on October 23, 2020. (ECF No. 24). On November 6, 2020, Plaintiff filed a Reply. (ECF No. 25).

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation

or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**B.**   **Extrinsic Evidence**

Before proceeding to the merits of Plaintiff's claims, the Court must first evaluate whether the rules of contract interpretation permit the consideration of evidence outside the four corners of the Promissory Note. Defendant argues that the Court may look to extrinsic evidence to discern the intent of the parties because the terms of the Promissory Note are ambiguous. Plaintiff responds that extrinsic evidence is prohibited here because the Note is clear and unambiguous. At bottom, the Court agrees with Plaintiff.

A "promissory note is, as between the parties to it, a contract, to which the basic rules of contract construction apply." Jenkins v. Karlton, 620 A.2d 894, 901 (Md. 1993). "Maryland follows the law of objective contract interpretation." Sy-Lene of Wash., Inc. v. Starwood Urb. Retail II, 829 A.2d 540, 546 (Md. 2003). This theory provides that the "written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the subjective intent of the parties" so long as "the language of the contract is clear and unambiguous, and free of fraud, duress, or mistake." DeLeon Enters., Inc. v. Zauno, 608 A.2d 828, 832–33 (Md.Ct.Spec.App. 1992) (citing Kasten Constr. Co. v. Rod Enters., 301 A.2d 12, 18 (Md. 1973)).

The interpretation of a contract, including whether the contract is ambiguous, is "ordinarily a question of law for the court." Grimes v. Gouldmann, 157 A.3d 331, 334–35 (Md.Ct.Spec.App. 2017) (quoting Wells v. Chevy Chase Bank, I.S.B., 786 A.2d 620, 629–30 (Md. 2001)). The Court "must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." Gen. Motors Acceptance Corp. v. Daniels, 492 A.2d 1306, 1310 (Md. 1985). Where "the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed." Id. In other words, "clear and unambiguous language in an agreement will not give way to what the parties thought the agreement meant or was intended to mean." Urb. Growth Prop. Ltd. P'ship v. One W. Balt. St. Assocs. LLC, No. 882, Sept. Term, 2015, 2017 WL 526559, at *5 (Md.Ct.Spec.App. Feb. 9, 2017) (citation omitted).

A written contract is not ambiguous "simply because, in litigation, the parties offer different meanings to the language." Diamond Point Plaza Ltd., P'ship v. Wells Fargo Bank, N.A., 929 A.2d 932, 952 (Md. 2007). Rather, "a written contract is ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning." Calomiris v. Woods, 727 A.2d 358, 363 (Md. 1999) (citing Heat & Power Corp. v. Air Prods. & Chems., Inc., 578 A.2d 1202, 1208 (Md. 1990)). When determining whether a contract is ambiguous, the Court will consider "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." Id. (quoting Pac. Indem. Co. v. Interstate Fire & Cas. Co., 488 A.2d 486, 488 (Md. 1985)). If the terms of a contract are ambiguous, the Court may consider extrinsic evidence to ascertain the intentions of the parties. See Sullins v. Allstate Ins. Co., 667 A.2d 617, 619 (Md. 1995) (citation omitted).

Defendant contends that there is ambiguity in the first paragraph of the Promissory Note, which reads:

> Dennis Krus, referred to herein as "Maker", agrees to pay to the Order of Walter and/or Mary, referred to herein as "HOLDER", or order, the sum of $200000.00, ( two hundred thousand & no/100 Dollars,) at 6103 Franklin Gibson Road, Tracy's Landing, Maryland, with interest thereon at an initial rate of 7% per annum, simple interest.

(Promissory Note at 1, Pl.'s Exs. at 2 (emphasis added)). Defendant asserts that "[w]hat is meant by 'or order' in this paragraph is unclear" and suggests that "the Note also seems to dictate that the Note is payable either from Maker to Holders **or** to the Property." (Def.'s Mem. L. Supp. Opp'n Pl.'s Mot. Summ. J. ["Opp'n"] at 5, ECF No. 24-1). Defendant

argues that it "would be confusing" for the Note to state that it is payable to the Property "[g]iven that the Property is not a party to the Note." (Id.).

Defendant's reading of this paragraph is strained, at best. Although the words "or order" make little sense in this context, no reasonable person would have thought that this paragraph meant that Defendant could make payments to the Property instead of to the Holder. Rather, notwithstanding the superfluous language, a reasonable person would have understood this paragraph to mean that Defendant was required to make payments to the Holder; i.e., Walter and/or Mary Krus. Moreover, because real property cannot be a party to a Promissory Note, it would be absurd for the Court to find that this paragraph intended to make the Promissory Note payable to the Property. See Middlebrook Tech, LLC v. Moore, 849 A.2d 63, 79 (Md.Ct.Spec.App. 2004) ("The court's interpretation should not permit an absurd or unreasonable result.") (citing Springhill Lake Invs. Ltd. P'Ship v. Prince George's Cnty., 690 A.2d 535 (Md. 1997)). At bottom, the Court declines to find that this paragraph is ambiguous merely because Defendant suggests another interpretation is possible. See Diamond Point Plaza, 929 A.2d at 952.

Defendant next contends that the Promissory Note is ambiguous because the Note states it is secured by collateral, even though there is no indication in state land records that the Note was recorded. Once again, the Court is not persuaded. The Promissory Note states: "This note is secured by the following collateral: 6103 Franklin Gibson Road, Tracy's Landing, Maryland 20779." (Promissory Note at 1, Pl.'s Exs. at 2). It also provides that "[t]he note shall be due in full as to principal and interest upon the sale, transfer or destruction of the collateral securing this note." (Id. (emphasis added)). Regardless of

whether the Note was ever recorded, there is nothing ambiguous about these terms. Read together, they clearly indicate that the Note is due in full upon sale, transfer, or destruction of the Property. Moreover, although it is true that parties to a promissory note may record the note or execute a deed of trust in order to secure real property as collateral, the Court is not aware of any requirement that a promissory note must be secured in order to be enforceable. Rather, a promissory note and deed of trust are separate, enforceable contracts. See Wellington Co., Inc. Profit Sharing Plan & Tr. v. Shakiba, 952 A.2d 328, 337 (Md.Ct.Spec.App. 2008). Because Plaintiff is simply seeking to enforce the Promissory Note as a contract, not a security interest, it is irrelevant whether the Note was secured. For these reasons, the provisions in the Note regarding collateral are not ambiguous.

Finally, Defendant also appears to suggest that the Promissory Note is ambiguous in light of the 1999 Deed and the Corrective Deed. According to Defendant, these Deeds give rise to an ambiguity because "[n]either deed references the parties' Promissory Note." (Opp'n at 7). This argument misses the mark. As a preliminary matter, before considering any evidence outside the four corners of the Note, the Court must first determine whether the language in the Note itself is ambiguous. Defendant does not explain, however, why the Court should read the Deeds together with the terms of the Promissory Note. Defendant does not argue that the Deeds and Note are "part of a single transaction" such that they may "be read and construed together as evidencing the intention of the parties." See Ford v. Antwepen Motorcars Ltd., 117 A.3d 21, 27 (Md. 2015) (quoting Rocks v. Brosius, 217 A.2d 531, 545 (Md. 1966)). Nor does Defendant provide any other reason why the Court should consider the Deeds—which, as Defendant admits, make no reference to the Note—

11

as part of its analysis of the Note's terms. Furthermore, even if the Court were to rely on the Deeds in its initial assessment of the Note, Defendant fails to explain how a deed's failure to refer to a promissory note renders the note invalid or modified. For these reasons, the Court finds there is no ambiguity in the Note as it relates to the 1999 and Corrective Deeds.

To the extent Defendant asserts the Note is otherwise inconsistent with the 1999 Deed and Corrective Deed, this argument also fails. The Deeds state that the parties thereto had "not done or suffered to be done any act, matter or thing whatsoever, to encumber the property hereby conveyed," (1999 Deed at 1, Def.'s Exs. at 3; Corrective Deed at 1, Def.'s Exs. at 6). The Corrective Deed further states "that the actual consideration paid, including the amount of any mortgage or deed of trust outstanding is in the total amount of NONE." (Corrective Deed at 2, Def.'s Exs. at 7). According to Defendant, this language is evidence that the parties did not intend for the Property to be encumbered by a loan in the amount of $200,000. (See Opp'n at 7). Defendant is correct that the Property is not encumbered by a mortgage or deed of trust because, as discussed above, the parties never secured the Note.[4] Nonetheless, the Promissory Note is a separate, enforceable contract even if the Property was not secured as collateral. In other words, the Deeds' provisions disclaiming any

---

[4] The Court's analysis on this point is bolstered by testimony from the attorney who prepared Mary Krus' will, who stated: "When I first talked to [Mary] about the promissory note, she kept calling it a mortgage. When I reviewed it, I told her this does not appear to be a mortgage, it does not appear to be filed, it does not appear to be in a fileable form." (Peyton Dep. at 23:6–10, Def.'s Exs. at 64). The attorney also testified that he could not find any indication in Anne Arundel County records that the Note had been recorded. (Id. at 60:13–16, Def.'s Exs. at 73).

encumbrances on the Property do not undermine Plaintiff's attempt to enforce the Promissory Note against Defendant.

To summarize, the Court finds that the Promissory Note is not ambiguous. Furthermore, even if the Court agreed with Defendant that the Promissory Note is ambiguous in some respects, none of these purported ambiguities relate to the critical issue in this case—that is, whether Defendant breached the Note by failing to make payments after his mother's death and by adding his wife's name to the deed. Accordingly, the Court will not consider extrinsic evidence and will confine its analysis to the four corners of the Note when evaluating Plaintiff's claims.

## C.      Disputed Facts

The Court now turns to the question of whether any evidence in the record presents a genuine dispute of material fact. Defendant contends that summary judgment is inappropriate because there is a dispute regarding whether "[t]he Promissory Note was modified from its original terms on at least two (2) occasions." (Opp'n at 3).[5] Defendant does not explicitly state the "occasions" to which he is referring; however, the Court presumes that Defendant intends to argue that the Note was modified: (1) when his parents agreed to reduce his monthly payments; and (2) as a result of the Corrective Deed.

---

[5] Defendant also argues there is a genuine dispute of material fact regarding whether the Promissory Note was discharged upon death of his mother and whether Defendant defaulted on the Promissory Note. These issues are not disputed facts but rather questions of law that are reserved for the Court to decide. Accordingly, any disagreement between the parties' regarding these issues does not preclude the Court from entering summary judgment.

The Court first evaluates Defendant's verbal agreement with his parents to reduce his monthly payments from $1,150 to $1,000. Defendant admits that this agreement was never committed to writing. (Dennis Krus Dep. at 18:23–19:13, Def.'s Exs. at 45). Plaintiff therefore contends that this modification is invalid because the Note is a contract related to real estate, and modifications to real estate contracts must be in writing. See Md. Code Ann., Real Prop. § 5-104 ("No action may be brought on any contract for the sale or disposition of land or of any interest in or concerning land unless the contract on which the action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged . . . ."). Regardless of whether the verbal agreement was a valid modification to the Note, this dispute is not material because it has no effect on the ultimate question in this case—that is, whether Defendant breached the Note by ceasing payments after his mother's death and subsequently adding his wife's name to the deed. Thus, this dispute does not preclude summary judgment.

The Court next considers the effect of the Corrective Deed, which deeded the Property to Defendant and his parents as joint tenants with the right of survivorship. In Maryland, where "property is held by joint tenants and one of the tenants dies, . . . [t]he surviving joint tenant becomes the sole owner of the property pursuant to the right of survivorship." Cooper v. Bikle, 640 A.2d 1120, 1126 (Md. 1994). Accordingly, Defendant became the sole owner of the Property after his mother's death. Defendant goes one step further, however, asserting that the Corrective Deed "mean[s] that upon the death of the Holders, no money as it relates to the Property would be due and owing as the Property would belong solely to the Maker." (Opp'n at 7 (emphasis added)). Defendant stated the

same in his deposition: "[W]hen both of my parents die, the house is mine and [] the note goes away because that's the way that the deed was currently on the house. It was changed to reflect that." (Dennis Krus Dep. at 24:14–18, Def.'s Exs. at 47).

It appears that Defendant believed that executing the Corrective Deed would ensure that the Note would be forgiven. Of course, because the Court cannot consider extrinsic evidence, Defendant's belief is irrelevant to this Court's analysis. And in any event, Defendant's understanding of the effect of the Corrective Deed is legally incorrect. The only legal effect of the Corrective Deed was that Defendant became the sole owner of the Property upon his mother's death. It had no effect on the Promissory Note. The Corrective Deed explicitly states that it "is made solely for the purpose of amending the tenancy of the parties of the second part from Tenants in Common to Joint Tenants with the Right of Survivorship as to the whole." (Corrective Deed at 2, Def.'s Exs. at 7). Defendant acknowledges that the Corrective Deed makes no mention of the Note, (Dennis Krus Dep. at 24:19–21, Def.'s Exs. at 47), and he did not discuss amending the Promissory Note with his parents at the time they executed the Corrective Deed, (id. at 49:10–13, Def.'s Exs. at 53). Defendant also fails to provide any legal support for his conclusion that his ownership of the Property waives his duty to make payments under the Promissory Note. At bottom, to the extent the Corrective Deed was intended to terminate Defendant's obligations under the Promissory Note upon the death of both of his parents, this intent is not evident from the face of the document. Defendant cannot avoid the fact that the Corrective Deed did not alter or extinguish his contractual obligations under the Note.

For these reasons, there is no dispute of material fact that would preclude the Court's entry of summary judgment here.

**D.     Plaintiff's Claims**

Having found that there is no dispute of material fact, the Court must next consider whether Plaintiff is entitled to judgment as a matter of law. Here, the parties agree that the Promissory Note is a contract. The interpretation of a contract is "ordinarily a question of law for the court." Grimes, 157 A.3d at 334–35. If the Court determines that a contract is unambiguous on a dispositive issue, "it may then properly interpret the contract as a matter of law." Cochran v. Norkunas, 919 A.2d 700, 709 n.8 (Md. 2007) (quoting Wash. Metro. Area Transit Auth. v. Potomac Inv. Props., Inc., 476 F.3d 231, 235 (4th Cir. 2007)). In doing so, "'[t]he words employed in the contract are to be given their ordinary and usual meaning, in light of the context within which they are employed.'" DIRECTV, Inc. v. Mattingly, 829 A.2d 626, 632–33 (Md. 2003).

In Count I of her Amended Complaint, Plaintiff contends that Defendant's failure to make payments on the Note since November 2017 is a material breach of the Note. (Am. Compl. ¶¶ 25–26). As the Holder of the Promissory Note, Plaintiff is permitted to enforce the Note against Defendant. See Deutsche Bank Nat'l Tr. Co. v. Brock, 63 A.3d 40, 49 (Md. 2013) ("[A] promissory note may be enforced by: (i) the holder of the instrument, [or] (ii) a nonholder in possession of the instrument who has the rights of a holder." (quoting Md. Code Ann., Comm. Law § 3-301)). The Promissory Note states: "Should MAKER fail to pay any installment when due, then HOLDER shall have the option to accelerate the payment of the full principal sum and accrued interest payable." (Promissory

16

Note at 1, Pl.'s Exs. at 2). Defendant admits that he stopped making payments under the Promissory Note after his mother's death on November 19, 2017. (Opp'n at 2). Thus, Plaintiff was entitled to accelerate the Promissory Note and demand payment from Defendant. Plaintiff demanded payment under the Promissory Note, but Defendant refused to pay. Defendant's refusal to make payments on the Note constitutes a breach. Accordingly, Plaintiff is entitled to judgment on her claim for breach of the Promissory Note.

As for Count II of her Amended Complaint, Plaintiff seeks a declaratory judgment that the entire Promissory Note is now due and owing because Defendant transferred the Property by executing the 2020 Deed. The Promissory Note provides that the full amount of interest and principal due shall be payable upon the sale, transfer, or destruction of the Property. (Promissory Note at 2, Pl.'s Exs. at 3). The 2020 Deed "grant[ed] and convey[ed]" the Property from Defendant and his parents to Defendant and his wife. (2020 Deed at 1, Pl.'s Exs. at 39). In general, "[a] deed is an instrument that conveys title to real property." Wildwood Med. Ctr., L.L.C. v. Montgomery Cnty., 954 A.2d 457, 464 (Md. 2008). "To 'convey' is 'to transfer or deliver (something, such as a right or property) to another, esp[ecially] by deed or other writing . . . .'" Id. (quoting Black's Law Dictionary 357 (8th ed. 2004)). "Therefore, 'convey' and 'transfer' are interchangeable terms." Id. at 464–65. Accordingly, executing the 2020 Deed constituted a "transfer" of the Property, making the interest and principal due under the Note payable in full. Plaintiff is thus entitled to a declaratory judgment that the entire Promissory Note is now due and owing.

Defendant nonetheless contends that he owes nothing to Plaintiff because the Note was intended to be forgiven upon his parents' death.[6] However, there is no such language in the Promissory Note. Importantly, "[i]t is a fundamental principle of contract law that it is 'improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardships.'" Calomiris, 727 A.2d at 368 (quoting Canaras v. Lift Truck Servs., 322 A.2d 866, 873 (Md. 1974)). Thus, a court is not permitted to "add or delete words to achieve a meaning not otherwise evident from a fair reading of the language used." Brendsel v. Winchester Constr. Co., 898 A.2d 472, 485 (Md. 2006) (Bell, C.J., dissenting). Ultimately, despite Defendant's assertion that his mother intended to forgive the Promissory Note upon her

---

[6] Although the Court's decision is based solely on the language within the four corners of the Promissory Note, the Court observes that the extrinsic evidence in the record does not clearly support Defendant's position that the Note was intended to be forgiven after his mother's death. First, aside from Defendant's own testimony, there is limited evidence in the record suggesting that Mary Krus intended to forgive the Note—in fact, there is significant evidence suggesting the opposite.

For example, the attorney who prepared Mary's will testified that Mary "thought upon her death [Defendant] had to pay the whole [Note]" and "[Mary] was surprised to learn that . . . [Defendant] had every right to just keep paying the interest until such time as one of the other events triggered [his obligation to pay in full]." (Peyton Dep. at 23:10–18, Def.'s Exs. at 64). As a result, Mary began "trying to craft a remedy as to how to maintain [her home] in Millville and try to get everybody a fair inheritance," which included making "[Defendant's] life insurance policy . . . payable to [Mary] in case [Defendant] died so she got her money." (Id. at 23:17–24:3, Def.'s Exs. at 64). According to her attorney, Mary was concerned that Defendant "wouldn't do what [she] wanted" because "[Defendant] didn't feel he had to pay anything after she died." (Id. at 32:19–33:9, Def.'s Exs. at 66–67). Taken together, this testimony suggests that Mary intended for Defendant to repay the loan in its entirety upon her death, not to forgive Defendant's obligations under the Note. As such, even if the Court were to consider extrinsic evidence here, it is not clear that such evidence would be helpful to Defendant's case.

death, he cannot avoid the fact that this intention is not reflected in the terms of the Promissory Note.

In sum, the language of the Promissory Note and the undisputed facts in this case reflect that the Promissory Note is now due and payable, but Defendant has not paid. Thus, Defendant is in breach of the Promissory Note, and Plaintiff is entitled to summary judgment in her favor.

**E.** **Damages**

Plaintiff alleges that she is entitled to $275,000 or more in damages resulting from Defendant's breach of the Promissory Note, plus interest, costs, and attorneys' fees. (See Am. Compl. ¶ 27). This amount roughly equates to the amount cited in Plaintiff's December 9, 2019 demand letter, which stated: "Through November 2017, [Defendant] paid $233,450 under the Promissory Note. . . . Assuming a twenty-two (22) year repayment term, [Defendant] would owe a total of $508,000 under the Promissory Note as of November 2, 2019. As such, [Defendant] still owes $274,550 under the Promissory Note." (Demand Letter at 1–2, Pl.'s Exs. at 11–12). Defendant stated in his deposition that he did not keep detailed records but agreed with Plaintiff's calculations of his payments under the Promissory Note. (See Dennis Krus Dep. at 36:7–11, Def.'s Exs. at 50). Despite this record evidence, the parties have not briefed the Court on the precise amount of damages. Accordingly, as set forth in the accompanying Order, the Court will provide Defendant the opportunity to formally respond to Plaintiff's calculation of damages before the Court enters a final judgment in this case.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's Motion for Summary

Judgment (ECF No. 21). A separate Order follows.

Entered this 16th day of June, 2021.


                    _____/s/_____
                    George L. Russell, III
                    United States District Judge